## In re Estate of Willis L. Lincoln, Deceased.
## Willis H. Lincoln, Appellee, v. John F. Cahill, Appellant.

### Gen. No. 41,641.

Opinion filed June 25, 1941.

LEVINSON, BECKER, PEEBLES & SWIREN, of Chicago, for appellant; EUGENE P. FLORSHEIM, of Chicago, and DON M. PEEBLES of counsel.

JAMES R. GLASS, of Chicago, for appellee; HERBERT M. LAUTMANN and LOUIS I. SHAPIRO, both of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Willis Lauriston Lincoln, a resident of Chicago, married Ida Ohrnberger on October 1, 1894. Willis H. Lincoln was born at Chicago, Illinois, on September 23, 1895, and was the only child of this union. The marriage was dissolved in a decree of divorce entered September 25, 1900. Willis H. Lincoln lived with his maternal grandparents from the time he was one until he was six years of age. After the divorce the boy continued to live at the home of his grandparents for about one year. Ida Ohrnberger Lincoln remarried

about a year after the divorce and the boy then went to live with his mother and stepfather. He could not recollect having seen his father more than five or six times. He met his father at funerals of relatives and also saw him on some occasions at furniture auctions. After the divorce, Willis L. Lincoln married Jeannette Krullaars. No children were born of this marriage. He made a will on February 9, 1909, leaving all his property to his wife Jeannette, and $1 to his son Willis H. Lincoln. He nominated Jeannette as executrix of the will. He died at Chicago on July 17, 1938, leaving as his only heirs and next of kin his widow, Jeannette G. Lincoln, and his son, Willis H. Lincoln. Willis L. Lincoln, his widow and son had been residents of Chicago for many years and were residents of that city at the time of his death. Jeannette G. Lincoln, the widow, died at Chicago, on November 15, 1939, leaving surviving as her only heirs and next of kin her brother, William J. Krullaars of Chicago, and a sister, Rieka Stedman of Laguna Beach, California. Shortly after the death of Jeannette, her brother, William J. Krullaars, was appointed administrator of her estate. The will of Willis L. Lincoln was discovered on December 1, 1939 and filed in the probate court on that day. During his lifetime Willis L. Lincoln did not have the reputation or appearance of a man of wealth. He did, however, leave a considerable estate. This was accumulated by him as a result of unusual ability in buying and selling real estate. Apparently, not even his wife suspected that he had accumulated a fortune. At the time of the funeral of Willis L. Lincoln, his son spoke to the widow Jeannette. She told him that his father did not leave a will or any estate, and that she "might have to go to California to live with her sister." About a year after the death of his father, Willis H. Lincoln retained the services of a law firm to ascertain whether his father had left any estate. This law firm reported

to him that no will had been filed and that no estate had been opened. He testified that he had a "normal curiosity to ascertain whether his father had left any estate."

On December 4, 1939, Martin J. O'Brien, as public administrator, filed his petition in the probate court of Cook county for appointment as administrator to collect and was appointed. This was done without notice to Willis H. Lincoln or any other person. On December 5, 1939, Martin J. O'Brien, as public administrator, filed his petition for appointment as administrator with the will annexed. Notice thereof was given to the surviving son, Willis H. Lincoln, who, on January 8, 1940, filed a petition for the appointment of William J. Krullaars as administrator with the will annexed. Both petitions were heard on March 14, 1940. The court granted the petition of Martin J. O'Brien as public administrator and appointed him as administrator with the will annexed of the estate and denied the petition of the son. From this order an appeal was perfected to the circuit court. On July 6, 1940, while the appeal was pending in the circuit court, Martin J. O'Brien died. On July 30, 1940, John F. Cahill filed his petition in the probate court, alleging that following the death of Martin J. O'Brien he was appointed public administrator of Cook county. He asked the court to appoint him as administrator with the will annexed and as administrator to collect. This petition was opposed by Willis H. Lincoln. On September 27, 1940, the probate court appointed John F. Cahill as administrator to collect and administrator with the will annexed *de bonis non*. An appeal was perfected from the latter order. This appeal and the appeal from the order appointing Martin J. O'Brien, were consolidated and heard together by the circuit court. On the hearing in that court John F. Cahill, as public administrator, tendered and asked leave to file a petition setting forth his appointment by the probate

court and praying that he be substituted as appellee in the appeal from the order of the probate court appointing Martin J. O'Brien. The petition set forth that Martin J. O'Brien had died, and that as a result there was no appellee in the proceeding in the circuit court. The petition further pointed out that the probate court, at the time of the appointment of Cahill as administrator with the will annexed *de bonis non,* had instructed him to appear before the circuit court and ask for leave to file such petition. The circuit court refused to grant leave to file the petition. The circuit court entered two orders. The first order found that at the time Willis H. Lincoln filed his petition for the appointment of William J. Krullaars as administrator, he was the sole surviving heir of decedent's estate and was entitled to the first preference in the nomination of an administrator. This order granted the petition of Willis H. Lincoln and appointed William J. Krullaars administrator with the will annexed. The second order found that Krullaars had been appointed administrator with the will annexed and revoked the appointment of Cahill. John F. Cahill, as public administrator of Cook county prosecutes an appeal from these orders, and from the order denying him leave to file his petition praying that he be substituted as appellee in place of Martin J. O'Brien.

Appellant insists that the appointment of O'Brien as administrator with the will annexed was proper. He calls attention to the provisions of section 1 of the Administration Act (sec. 1, ch. 3, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 110.001]), to support his statement that due to the death before probate of the executrix named in the will the estate is regarded as intestate for the purpose of selecting an administrator. He urges that if none of the relatives entitled to preference in administration of an intestate estate file a petition for letters within sixty days after death, the administration of the estate should be committed to the

public administrator if he filed application therefor prior to the filing of any application by any heir, and relies on the language of section 18 of the Administration Act (sec. 18, ch. 3, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 110.018]) that ''Preference and the right to nominate under this Act must be exercised within sixty days from the death of an intestate, at the expiration of which time administration shall be granted to the public administrator.'' Appellee replies to this argument by saying that a son of the deceased, or his nominee, has preference over the public administrator to administer on his father's estate, when application is made by the son for letters prior to the time the estate is committed to the public administrator. He leans heavily on the case of *Dupee v. Follett,* 304 Ill. 166. From a perusal of that case it appears that Sarah A. Dupee, a resident of La Salle county, died intestate February 20, 1920. At the time of her death she owned two residence properties, eight vacant lots and personal property of the value of $500. No petition for letters of administration was filed by anyone until July 28, 1920, when Frank W. Dupee, a son, filed a petition for his appointment as administrator. Frank Follett, the public administrator of the county, objected to the letters being granted and asked that letters of administration be granted to him as public administrator. The probate court denied the petition of Dupee to be appointed as administrator, and allowed the petition of Follett. On appeal to the circuit court the appointment was sustained. The order was then affirmed by the Appellate Court. The Supreme Court, however, held that it was error to deny the application for the appointment of the son as administrator, reversed the judgment of the Probate, Circuit and Appellate Courts and remanded the cause to the probate court with directions to set aside the appointment of the public administrator and to grant letters to the son. Follett contended that the children having failed

to nominate someone as administrator within sixty days after the death of their mother, it was the imperative duty of the probate court to grant the petition of the public administrator. The Supreme Court said (168):

"We cannot agree that the statute is mandatory in all cases where the heirs have not exercised their right within sixty days. . . . If the deceased leaves relatives in this State who will administer, and they seek to do so before the public administrator is appointed, they have the right to do so even though they did not attempt to exercise that right within sixty days. . . . The office was created for the benefit of such estates, and if the heirs apply for letters of administration before application is made to commit the administration to the public administrator, although more than sixty days have expired since the death of the intestate, letters should be granted to them or to the person they nominate. It was the clear intent of the legislature that relatives and creditors of the intestate should be preferred to the public administrator, as evidenced not only by the plain language of section 18, but also of sections 19, 46 and 48. If none of the eight preferred classes apply for letters within sixty days from the death of the intestate then the administration may be committed to the public administrator, but if the heirs apply for letters before the estate is committed to the public administrator, it was never intended that he should, by objecting, secure letters to himself." Appellant calls attention to the language of the Supreme Court that "if the heirs apply for letters of administration before application is made to commit the administration to the public administrator, although more than sixty days have expired since the death of the intestate, letters should be granted to them or to the person they nominate," and argues that in view of the fact that O'Brien made application to commit the administration to himself as public administrator be-

fore Willis H. Lincoln applied for letters of administration for Krullaars, he (appellant) should prevail. We have carefully studied the opinion in the *Dupee* case and are of the opinion that the language used by the Supreme Court leaves no room for argument. That opinion, states in clear language that "if the deceased leaves relatives in this State who will administer, and they seek to do so before the public administrator is appointed, they have the right to do so, even though they did not attempt to exercise that right within sixty days," and that "if the heirs apply for letters before the estate is committed to the public administrator, it was never intended that he should, by objecting, secure letters to himself." In the instant case, O'Brien made application on December 5, 1939, and Willis H. Lincoln made application on January 8, 1940. Both applications were heard together. The application of the son was filed before the estate was committed to the public administrator, and under the ruling of the Supreme Court in the *Dupee* case the son had the right to nominate the administrator and the public administrator could not "by objecting, secure letters to himself."

The second criticism leveled at the judgment of the circuit court is that upon the death of O'Brien and the appointment of Cahill as public administrator, the latter was entitled to be appointed administrator with the will annexed *de bonis non* in place of O'Brien. On the preceding point we have held that O'Brien's appointment by the probate court was invalid, and that the court should have granted the petition of Willis H. Lincoln. Our views on that point dispose of the case and make it unnecessary for us to consider the second point.

For the reasons stated, the orders of the circuit court of Cook county are affirmed.

*Orders affirmed.*

HEBEL and DENIS E. SULLIVAN, JJ., concur.